## WEAVER ET. AL. *vs.* LAPSLEY.

[MOTION TO SET ASIDE A JUDGMENT OF THIS COURT AND TO GRANT A NEW TRIAL.]

1. *Constitution of Alabama; section 2, article 4, of, mandatory in its character; law contravening provisions of, null and void.*—The 2d section of the constitution of Alabama, that declares, "Each law shall contain but one subject, which shall be clearly expressed in its title," is mandatory in its character, and any law contravening its provisions is null and void.

2. *Act of December 17th, 1868, entitled "An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned, and to repeal sections 2876 and 2877 of the Revised Code of Alabama; unconstitutionality of.*—The act of the 17th December, 1868, entitled, "An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned, and to repeal sections 2876 and 2877 of the Revised Code of Alabama," is such a law. It contains two distinct subjects, to-wit : To declare void certain judgments and grant new trials, &c., is one subject ; and to repeal sections 2876 and 2877 of the Revised Code, is another subject, both of which are clearly expressed in its title, and is, therefore, null and void.

3. *Same; exercise of judicial power by Legislature.*—It is also null and void, because, in the passage of said law, the legislature exercised judicial power, in violation of the 3d article of the constitution of the State.

4. *Same; bill of rights in violation of.*—The said act is in conflict with the eighth section of the bill of rights, which declares that no person shall be deprived of life, liberty or property, but by due course of law.

5. *Same; constitution of United States, in violation of.*—It is also void, because it violates the 24th section of the bill of rights, that declares, "that no *ex post facto* law, or any law impairing the obligation of contracts, shall be made ;" and also, that part of the 10th section of the first article of the constitution of the United States, that declares, no State shall pass any *ex post facto* law, or law impairing the obligation of contracts.

The facts upon which the application is based, are fully set out in the opinion.

PETTUS & DAWSON, *pro motion.*
JOHN T. MORGAN, *contra.*

[No briefs came into the hands of the reporter.]

PECK, C. J.—The following motion has been entered

upon the motion docket of this court, at the present term, to-wit :

" Supreme court of Alabama, January Term, 1869.

Leroy G. Weaver *et. al.* ⎫ And now comes the appellant,
  *vs.*    ⎬ and moves the court, that the
 John W. Lapsley. ⎭ judgment rendered in said case,
on the 2d day of July, 1868, by the supreme court, be set aside, and a new trial granted, and the said case reheard in this court. This motion is made on the ground stated in the petition and affidavit of said Weaver, and the record of said cause, both appearing on file.

   PETTUS & DAWSON, attorneys for motion.
To Messrs. MORGAN & LAPSLEY, attorneys for appellee."

This motion is accompanied by a notice to the said John W. Lapsley, or Messrs. Morgan & Lapsley, his attorneys, that said motion would be made in this court on the 28th day of January, 1869, which appears to have been served by the sheriff of Dallas county, by leaving a copy of the same with said attorneys, Morgan & Lapsley, on the 14th of January, 1869.

With this motion is filed, in this court, the sworn petition of said Weaver, which states, in substance, that on the 13th day of March, 1866, said John W. Lapsley commenced his suit, in the circuit court of Dallas county, against petitioner, by summons and complaint ; that at the fall term of said circuit court, in the year 1867, said suit was tried, and judgment rendered against petitioner for twenty-four hundred and forty-three dollars and sixteen cents, besides costs of suit ; that on said trial, a bill of exceptions was taken by petitioner to the rulings of said court ; that an appeal was taken to this court by petitioner, and that Thomas B. Wetmore and S. N. McCraw were his sureties on his appeal bond ; that at the July term of this court, in the same year, 1868, said judgment was affirmed, and judgment rendered against said petitioner and his said sureties, for the amount of said judgment, ten per cent. damages and costs, &c. Petitioner makes a transcript of

15

said suit, in the said circuit court and this court, as a part of his said petition, marked "Exhibit A," and states therein that he is advised, and believes he has a meritorious defense to said suit; that the contract on which suit was brought, was made on the first day of February, 1865; that the entire contract made between petitioner and said Lapsley, at the time the note sued on was made, is fully set forth in said bill of exceptions, copied into said transcript, marked "Exhibit A;" that said defense is fully set forth in said transcript; that he is advised and believes, and so states, that said judgments, both of the said circuit court and of this court, are erroneous, and that the errors appear in said transcript.

Said petitioner, for himself and his said sureties, prays that said judgment of this court be set aside, and a new trial granted, and the said cause be reinstated on the docket of the second division of this court, to be again tried, &c.

It is admitted, by the counsel of said Weaver, that his motion is based upon an act of the general assembly of this State, approved December 17, 1868, entitled "An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned, and to repeal sections 2876 and 2877 of the Revised Code of Alabama." It is also admitted that if said act is unconstitutional and void, then this motion cannot be granted. It is very clear, this admission is rightly made. In the case of *Van Dyke v. The State*, 22 Ala. 54, the court says: "It is most unquestionably true, that after the final adjournment of this court, it ceases to have any power over its records, other than such as is incident to all courts of general jurisdiction, that of correcting clerical errors, where the record affords matter upon which to base such correction. After its final adjournment, its *judgments are absolute and conclusive*, and the court has no power over them."

The question as to the validity of that act, is, therefore directly made, and must be met and decided. If constitutional, the motion may prevail; if unconstitutional, it must be overruled.

At the present term, in the case of *Wm. W. Sanders et.*

*al. v. Septimus D. Cabaniss, Ex'r, &c.,* the fifth section of said act is declared unconstitutional and void.

Much of the argument, and many of the authorities referred to in that case, are applicable to some of the views that will be taken and considered in this case. But first, we will take up and dispose of the question growing out of the title of the said act.

The second section of the fourth article of the constitution, declares that, " the style of the laws of this State shall be : ' Be it enacted by the General Assembly of Alabama.' Each law shall contain but one subject, which shall be clearly expressed in its title ; no law shall be revised or amended, unless the new act contains the entire act revised, or the section or sections amended ; and the section or sections so amended, shall be repealed." Does the law we are considering contain more than one subject, and is each one clearly expressed in its title ? If so, then it is in violation of this section of the constitution, and we can see no escape from the declaration, that the whole act is unconstitutional and void. It is not like the case where one section of an act may be constitutional and valid, and another unconstitutional and void. Here, the difficulty grows out of the fact that the act contains two distinct subjects, to-wit : " To declare void certain judgments, and to grant new trials in certain cases therein mentioned, and to repeal sections 2876 and 2877 of the Revised Code of Alabama ;" both of which are clearly expressed in the title of said act. In such a case, the court has no power to select and say which part of the act shall be valid, and which void. Therefore, the whole act must stand or fall together.

The following are some of the reasons that have brought us to this conclusion. This section of said fourth article of the constitution, declares that " each law shall contain but one subject, which shall be clearly expressed in its title." If this language is mandatory, and not directory merely, then the question is settled ; the whole act must fall, and there is no help for it ; the words used are plain, and without ambiguity, and more, they are not technical, and must, therefore, be understood, in their common, ordinary sense. They are the words of command, and nothing less. Not

words that may be obeyed or disregarded, at the pleasure of the legislature. The great fundamental rule in construing constitutions, as well as all other instruments, is, to ascertain the meaning of those by whom they were made, from the language of the instruments themselves, and if this can be done, that meaning must prevail, unless it is in conflict with the law of God, or some higher human law. " Each law shall contain but one subject, which shall be clearly expressed in its title." Can any reasoning or argument make this language mean, that any law may contain two or more distinct subjects, and yet not violate its meaning. The language is, "shall contain but one subject." We can not see how words can make the meaning plainer, or more direct. It is clearly the language of command. Look at the language used in the section immediately before, and the one following the one we are considering, and, also, that employed in the other clauses of the same section.

Section one declares, " the legislative power of this State shall be vested in a general assembly, which shall consist of a Senate and House of Representatives."

Can the legislative powers of the State be vested in any other body, but a general assembly ? Or, can such general assembly consist of more, or less, than two houses, to-wit, a Senate and House of Representatives ?

The third section declares that " the term of office of the senators shall be four years, and that of representatives two years." Can these terms of office be longer or shorter than four years for senators, and two years for representatives, and yet be in harmony with the constitution ?

The second section, the meaning of a part of which we are trying to ascertain, declares that, " the style of the laws of this State shall be : " Be it enacted by the General Assembly of Alabama." Can they have any other style, and yet, contravene the plain words of this section ? Again, " no law shall be revised or amended, unless the new act contain the entire act revised, or the section or sections amended ; and the section or sections so amended, shall be repealed."

Can this be done—can a law be revised or amended, unless the act revised or the section or sections amended, be

set out in the revising or amending act, and the will of the people, who made the constitution, not be disregarded? This clause of the same section, in the constitution of 1865, with only an immaterial verbal difference, has been construed and held to be mandatory and imperative in its meaning and character, and a law contravening its provisions, held to be null and void.—*Tuskaloosa Bridge Co. v. Olmstead*, 41 Ala., p. 9.

We approve of the reasoning and conclusion of the learned chief justice who delivered the opinion of the court in that case. The cases referred to in that opinion, with two exceptions, Ohio and California, show that the courts of the States, having similar provisions in their constitutions, have held contravening acts null and void. To hold such provisions to be rules of *procedure* only, prescribed for and directed to the legislative department of the government *exclusively*, and to depend for their observance on the conscience and judgment alone of the individual members of that department, we think a great error. We were each of us members of the convention, and we know that an effort was there made to leave this second section out of the constitution, and it failed by a large vote ; we can not, therefore, yield to the argument that it prescribes a rule of procedure merely.

This train of reasoning, with the authority of the case of the *Tuskaloosa Bridge Co. v. Olmstead, supra*, has led our minds undoubtingly to the conclusion that the said section of the constitution is imperative and mandatory, and a law contravening its provisions, is null and void. The act of the 17th December, 1868, manifestly contains two separate and distinct subjects, having no connection whatever with each other. To declare void certain judgments, and to grant new trials in certain cases therein mentioned, is one subject; and to repeal sections 2876 and 2877, of the Revised Code of Alabama, is another; and can not be joined together in the same act, without an utter disregard of the plain language of the constitution, and must, therefore, be held to be invalid.

2. The second, third, fourth and fifth sections of this act, are in conflict with the third article of the constitution of

this State. In the passage of these sections, the legislature exercised powers properly and exclusively belonging to the judicial department of the government.

We rest this objection to the act mainly upon the authority of the case of *Sanders et al. v. Cabaniss, Ex'r*, and the authorities therein referred to, decided at this term. The passage of the second section is not so clearly and plainly an exercise of judicial power, as the passage of the third and fifth sections, nor are they so palpably an exercise of judicial powers, as the passage of the fourth section, which directly, and without any intervention of either judge or court, declares certain judgments and decrees absolutely null and void; but the intention of the legislature, as to each and all of them, is to declare void certain judgments, and to set aside and grant new trials in others. To grant new trials is not so high an exercise of such powers, as to declare judgments void; but to do either is to exercise judicial powers, and it makes no difference whether the law operates to accomplish the purpose directly or indirectly; in either case, the constitution is violated.

In the case of *Sanders et al. v. Cabaniss, Ex'r, supra*, the opinion of the court says: " It is a very clear proposition, that what can not be lawfully done directly, can not be done indirectly. No device, though it be so cunningly contrived, as to make wrong appear to be right, can justify it." To the same effect is the case of *Haley et al. v. Clark*, 26 Ala. 439; and, also, the case of *Lewis et al. v. Webb, Adm'r*, 2 Greenleaf, 326. In this last case, it was argued, as it is here, in behalf of the action of the legislature, that it was not in any degree judicial; that the resolve of the legislature went no further than to authorize a re-examination of the cause—to empower one judicial court to review the proceedings of another judicial court, by way of appeal; and thus, to do complete and final justice to all concerned. To this, the court, by Chief Justice Mullen, replied, " It is true, the resolve does not, *in terms*, purport to transfer property directly from one man to another, by mere legislative authority; but it proposes to grant to one party in a cause, which has been according to the existing laws, *finally decided*, special authority to compel the other party, *contrary*

*to the general law of the land,* to submit his cause to another court for trial; the consequence of which *may be,* the total loss of all those rights, and all that property which the judgment complained of had entitled him to hold and enjoy; that is to say, it proposes to accomplish, in *an indirect and circuitous manner,* that which the existing laws forbid, and which, by a direct and legal course, can not be attained; and to perform an act respecting a cause, between party and party—an act, therefore, of a judicial character, in the simple form of legislation." It is wonderful how exactly that case and this one are, in all essential particulars, almost the same. Here, the object and purpose of the act are to compel the plaintiff in the judgment, sought to be set aside, to submit his case to another trial, by which a judgment, final and absolute, and over which the court has no authority whatever, may be reversed; and this, contrary to the general law of the land; the consequence of which may be, the total loss of all the rights and all the property which the judgment complained of entitles him to hold and enjoy, which is just what the appellant expects and intends to accomplish, and all under the plea, as in that case, that complete and final justice may be done to all concerned; for, unless the appellant expected, in some way, to get rid of the judgment against him, he would not ask to have the judgment set aside and a new trial granted; but this, Chief Justice Mullen so ably reasons, can not be done.

These sections of said act, the second, third and fourth, (the fifth having been already declared void by this court), are therefore void, because, in passing them, the legislature exercised judicial powers, in violation of the third article of the constitution. The security, as well as the harmony of the government, depends greatly upon each department thereof, conforming itself to the exercise of those powers properly assigned to it by the constitution; any invasions, therefore, of the powers that appropriately belong to either of the other departments, should be promptly met at the threshold, lest, by being repeated, they might seem to acquire the plausability and force of a precedent. In such cases, for one, I am prepared to stand in the breach, and to " bring forth the spear and stop the way."

3. We also hold that this law is obnoxious to the charge, that it violates the eighth section of the bill of rights, which declares that no person shall " be deprived of his life, liberty, or property, but by due course of law." The intent of this act, as is manifest from the title itself, is to take away from, deprive the owner of, and utterly destroy what it is the object of this section of the bill of rights to protect. A final judgment is property—may be owned, and the fruits of it enjoyed by the owner, and on his death it goes to his personal representatives, as assets belonging to his estate; first, for the payment of debts, and then to be distributed among the distributees of the deceased. This act of 'the legislature is in no proper sense " due process of law." The terms "the law of the land," " due process of law," and " due course of law," whether found in the English charters and statutes, or in our American constitutions, have the same meaning. Lord Coke says that " by the law of the land," means " by due course and process of law, by indictment or presentment of good and lawful men, where such deeds be done, in due manner, or by writ original of the common law." In *Dorman v. The State*, 34 Ala., at page 236, the court says " due process of law " means a judicial proceeding, regularly conducted in a court of justice, as contra-distinguished from a statutory enactment. It is argued by appellant, that no one has any vested right in a defense arising out of the statute of limitations, or the time limited for an appeal. This is readily admitted, but he has a vested right in a final absolute judgment, that has passed beyond the control of the courts, as much as he has in his dwelling-house or farm, and they are all equally property, and entitled to protection alike.

4. These sections are also in conflict with the twenty-fourth section of the bill of rights, which declares " that no *expost facto* law, or any law impairing the obligations of contracts, shall be made ; and with the last clause, of the first part of the tenth section, of the first article of the constitution of the United States, which declares that " no State shall pass any law impairing the obligation of contracts."

A judgment is a contract. Contracts or obligations of records consist of judgments, recognizances, and statutes staple; and these are of inferior force, because they have been promulgated by, or are founded upon the authority, and have received the sanction of a court of record.— Chitty on Contracts, p. 2. The most general division of contracts, is into contracts by specialty, and simple contracts. Contracts by specialty, are those which are reduced to writing and attested by a seal, and contracts of record. These last are judgments, recognizances, and statutes staple.—1 vol. Parsons on Contracts, p. 7. Contracts by judgment, impose the highest obligation known to the law, and although there is in such contracts no promise in fact, the law implies a promise, and it is upon this principle that debt lies upon the judgment of a court of record.— Chitty on Contracts, p. 23. Such contracts are entitled to the protection of the constitution equally with other contracts; and no State can pass any law impairing their obligation. I do not propose to argue at length this question in this opinion. The decisions are numerous, both in the supreme court of the United States, and in the courts of the several States.

It is manifest, if the act of December 17, 1868, is held to be constitutional, and the motion of the appellant prevails, the obligation of this judgment-contract of record, will not only be impaired, but may be utterly destroyed. If this be so, then it is clear the act must be held to be void both by our own constitution and the constitution of the United States. The authorities on this subject are, most of them, referred to in the able dissenting opinion of C. J. Walker, in the cases of *Ex parte Pollard*, *Ex parte Woods*, 40 Ala., p. 77, where they can be seen, without burthening this opinion, by referring to them here. The foregoing reasons satisfy us that the entire act of the 17th December, 1868, entitled " An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned, and to repeal sections 2876 and 2877 of the Revised Code of Alabama," is unconstitutional and void, and it is hereby so declared.

Let the motion of the appellant be overruled at his cost, and the costs of his sureties in his appeal bond.

We concur in the conclusion of the chief justice, and with the able argument by which he sustains it, but we do not desire to be committed now, to or against the proposition that judgments of the courts of this State, rendered during the late war, and the succeeding provisional governments, may not, through proper legislation, be reviewed by the courts under the legal State government.

THOS. M. PETERS, J.<br>B. F. SAFFOLD, J.